MILTON MALONE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Where the defendant was placed on trial, and a mistrial was ordered on account of the sickness of one of the jury, it was not error in the Court to place said defendant again on trial during the same term of the Court.

2. A motion for continuance was submitted upon the ground that the defendant was too sick to engage in the trial, and the Court summoned two physicians, who disclosed, under oath, that he was suffering from the effects of alchohol, from nervous derangement, and on this statement, passed the case to a time indicated by the physicians. When he was again called on to announce, the same motion was submitted. The Court asked his counsel if his condition had grown worse. They replied that it had not. Upon their stating that they had nothing further to offer in support of the ground of alleged sickness, it was not error in the Court to overrule the motion.

3. Where the movements of a witness are evidently controlled by the friends of the defendant, and the Judge certifies that he had no doubt, from all that had occurred in the case, that the motion for continuance was made for delay only, and no compulsory process had been applied for to compel her attendance, this Court will not interfere with the discretion of the Court below, exercised in overruling the motion for continuance, on account of the absence of said witness.

4. The Court has discretion where a defendant is placed on trial at the term of the Court at which the indictment was found, whether to sustain a motion for a continuance or not, even though the requirements of section 3471 of the Code have been complied with.

5. An indictment found by a grand jury, constituted by filling up the

Malone *vs.* The State of Georgia.

places of the drawn grand jurors who failed to appear, by tales jurors, as provided by the Act of 1869, is valid.

6. A challenge to the array of jurors put upon defendant, on the ground that the various panels have been drawn from a box containing the names of only one thousand persons, whereas the number of persons in the county subject to jury duty, from whom he has a right to select, amount to four thousand, was properly overruled, where no proof was offered in support thereof.

7. This Court announces to the public, with all the emphasis its judgment can impart, that provocation by words, threats, menaces or contemptuous gestures will, in no case, be sufficient to free a person, who kills another by shooting him, from the guilt and crime of murder.

8. The reasonable doubt, which would acquit the defendant, must be pertinent to the matter in issue, and arising out of the evidence, or the want of evidence.

9. The charge that drunkenness could be looked to, to ascertain and determine the condition and state of the defendant's mind, and to throw light upon the inquiry whether there was malice, was quite as favorable to the defendant as he had a right to expect.

10. Whether the defendant and the deceased were strangers to each other was a question of fact for the jury, and if they were, and one was killed by the other without any considerable provocation, the law will imply malice.

11. The verdict should be read to the jury before they are polled.

12. If the bailiff who attended the jury ate and slept in the same room with them, it was incumbent on the defendant to have shown it by competent evidence.

13. The verdict is supported by the evidence.

14. Newly discovered evidence which is merely cumulative is no ground of new trial.

15. Evidence is cumulative when it goes to the fact principally controverted upon the trial, and respecting which the party asking for a new trial produced testimony.

16. Newly discovered evidence, which might have been obtained by the exercise of ordinary diligence before the trial, is no ground of new trial.

Criminal law. Murder. Mistrial. Continuance. Indictment. Grand jury. Jury. Challenge. Reasonable doubt. Drunkenness. Malice. Polling jury. New trial. Newly discovered evidence. Cumulative evidence. Before Judge HOPKINS. Fulton Superior Court. October Term, 1872.

The defendant pleaded in abatement to the indictment, upon the ground that it was found by only ten of the original grand

jurors who were drawn, the panel having been filled with talesmen summoned for that purpose.

The plea was overruled, and the defendant excepted.

The defendant challenged the array of jurors put upon him, upon the ground that the various panels composing the same were drawn from a box containing the names of only one thousand persons, while the number of persons in the county of Fulton subject to jury duty, and from whom the defendant had the right to select a jury, amount to four thousand or more.

The Judge attached a note to this challenge, in which it is stated that no proof was submitted in support of the allegations therein contained. The challenge was overruled, and the defendant excepted.

With the above statement, this case will be found fully reported in the opinion.

W. A. HAWKINS; GARTRELL & STEPHENS; J. F. POU; HILL & CANDLER; D. P. HILL, for plaintiff in error.

JOHN T. GLENN, Solicitor General; S. B. SPENCER; THRASHER & THRASHER, for the State.

WARNER, Chief Justice.

The defendant was indicted for the murder of Frank Phillips, and put on his trial therefor, at the first term of the Court after the offense was alleged to have been committed and indictment found. During the progress of that trial, and before its termination, one of the jurors was taken sick and a mistrial was ordered by the Court for that cause. During the same term of the Court, (the Court being held for several weeks,) the case was again called up for trial, and another trial was had, which resulted in a verdict finding the defendant guilty. A motion was made for a new trial on the several grounds specified and set forth in the record, which was overruled by the Court, and the defendant excepted. When the case was called the second time for trial, the de-

Malone *vs.* The State of Georgia.

fendant made a motion for a continuance on the ground that the case could not legally be tried again during the same term of the Court; that he was then too sick to engage in the trial, and, also, for the absence of Emma Gilmore, a material witness for him, who had been subpœnaed, and who was present and testified on the first trial, states the material facts expected to be proved by her; that when she was first subpœnaed, she resided in the county, but did not state that she then resided in the county, or where she resided; that said witness was not absent by his consent or procurement; that he expected to be able to procure her testimony at the next term of the Court; that the application was not made for delay, but to enable him to obtain the testimony of said absent witness.

There is nothing in the laws of this State which prohibited the Court from proceeding with the second trial as it did, but, on the contrary, it was its duty to have done so, provided the term of the Court would extend to such a length of time as would allow the trial to be had. As to the sickness of the defendant, the presiding Judge certifies "that when the case was called at the appointed time for trial, it was stated that defendant was too sick to come into Court. I summoned two physicians, who, under oath, disclosed that defendant was suffering from the effects of alcohol; that there was nervous derangement. I then passed the case for a time which was indicated by the physicians. When he was again called on to announce, this affidavit was presented. I asked his counsel if his condition had grown worse, and they replied that it had not. I then asked them if they had anything further to offer in support of the ground of alleged sickness, and they said they had not. I was satisfied from all that had occurred in open Court, that defendant was in a proper condition to proceed with the trial." This certificate of the presiding Judge, as to the sickness of the defendant, disposes of that ground made in the showing for continuance. In relation to the absence of Emma Gilmore, it appears in the record that a motion had been made by the defendant on the first trial to

continue the case on account of her absence and others, which was overruled, and when that was done, she did appear in Court and testified for the defendant, and in that testimony disclosed facts which clearly indicate that her movements in coming from Chattanooga here to testify, were controlled by friends of the defendant; in other words, her testimony clearly shows that her movements in attending the Court were regulated by the wishes of the defendant's friends. She had left the State before the trial and gone to Chattanooga. When the motion for a continuance was overruled on the first trial, she returned here again in time to testify in the case in favor of the defendant, and is absent again when the case is called for trial the second time. These facts were all known to the Court when the motion for a continuance was made at the second trial. The presiding Judge certifies that he had no doubt, from all that had occurred before him in the progress of the cause, that the showing was made for delay only and to avoid a trial. Upon the former trial, Emma Gilmore was produced and examined, and the circumstances of her absence, and the means employed to get her to be present at the trial, are shown in her testimony. The Court admitted her testimony, taken down by the reporter on the first trial, to be read in evidence in favor of the defendant on the second trial. The argument for the plaintiff in error is, that when a defendant is indicted for a criminal offense and a motion is made for a continuance at the term of the Court at which the indictment is found on account of the absence of a witness, and he complies with the requirements of the 3471st section of the Code in making his affidavit for such continuance, the Court has no discretion under the law but to grant it. This argument is entirely too comprehensive and proves too much, as applicable to the continuance of criminal cases, or any other class of cases, inasmuch as it would deprive the Court of the power and authority to exercise its own judgment and discretion as to the continuance of any criminal case, and make the defendant the judge thereof, under the law, instead of the Court. If the defendant swears that the application for a continuance

Malone *vs.* The State of Georgia.

on account of the absence of a witness is not made for the purpose of delay, and the presiding Judge should see the witness standing in the Court room, according to this argument he would have no discretion to be exercised in refusing the application for a continuance. This is not the rule applicable to the continuance of either criminal or civil cases, as we understand it. The Superior Courts are clothed by the Constitution and laws of the State with original jurisdiction for the trial of criminal cases, and the Judges thereof should have, and are presumed to have, sufficient judgment and discretion to make a practical application of the law relating to every motion for the continuance of a criminal case which may be made before them. The law devolves that duty upon them, and when they have exercised their judgment and discretion in refusing a continuance, this Court will not control it, unless that discretion has been grossly abused. In this case, the defendant and his counsel knew that the witness had left the State after she had been first subpœnaed, and had returned to the State and testified on the first trial, and when they were notified that the case would be tried again, it was their plain duty to have applied for compulsory process to have compelled her attendance, either to have had her retained in custody to give evidence, or recognized for that purpose. They had ample time to have done so, and as they knew the migratory character of the witness, there was an entire want of diligence in this respect on their part. In view of all the facts disclosed in this record, we cannot say that the Court below abused the discretion vested in it by law, in overruling the defendant's motion for a continuance. In our judgment on this branch of the case, we have left out of view altogether the counter-showing made by the State, and have considered the motion made for a continuance wholly independent of that counter-showing.

There was no error in overruling the defendant's plea as to the grand jury that found the bill of indictment. The certificate of the presiding Judge states that all of the drawn grand jurors did not appear, and that he filled up the jury with tales

jurors, as provided by the Act of 1869, and the jury thus made up found the bill. The 8th section of the Act of 1869 declares, " that when, from challenge, or from *any other cause,* there is not a sufficient number of persons in attendance to complete the panel of grand jurors, the Court may order the sheriff or his deputy to summon persons, qualified as hereinbefore required, sufficient to complete the panel."

There was no error in overruling the defendant's challenge to the array of jurors put upon him by the State at the last trial. The presiding Judge certifies that the cause of challenge contained in the first ground of the motion, occurred on the first trial, and not on the second ; that the last ground contained in the motion was made on the last trial, but as no proof was offered to sustain it, it was overruled. This disposes of the technical objections and exceptions made by the counsel for defendant before the evidence in the case was submitted to the jury.

It appears from the evidence in the record that the defendant shot the deceased in a house of ill fame, at night, in the city of Atlanta, in the month of August, 1872. It does not affirmatively appear in the evidence that the defendant and deceased knew each other before they met in that house that night, and we think it to be a fair inference therefrom that they were not personally acquainted with each other ; whether they knew each other by sight only, is not so clear. Both were young men, the deceased the youngest of the two. Deceased went to the house first, and after a short time defendant came there. The evidence is, that both had been drinking and were somewhat excited by liquor. It also appears in the evidence that a short time before the killing defendant applied to a saloon keeper, who had his pistol, for it, and said, as he put it in his pocket, " You will hear from me in fifteen minutes." The distance from the saloon to the house where the killing took place is about three hundred yards. About eight minutes thereafter, defendant shot deceased in the house to which he went. There is some conflict in the evidence as to what was said by the deceased after the defendant got there. The weight

Malone *vs.* The State of Georgia.

of the evidence is, that one of the women of the house was near defendant and deceased, when deceased put his hand on her and remarked to defendant, "You cannot have her," or, as one of the witnesses states it, the deceased laid his hand on the woman's shoulder and said, "Mr. Malone, you can't have this girl." Another witness, Emma Gilmore, states that deceased put his hand on his hip and said, "I will shoot, you son of a bitch, if you touch my woman." The evidence is pretty clear that the deceased was unarmed, as no weapon was seen in his hands or found upon his person after his death. There is a conflict in the evidence as to the position of the deceased at the time of the shooting. Some of the witnesses state that when defendant said he would shoot his "God damned brains out," deceased held up his hands and said, "Let him shoot." Emma Gilmore states that deceased had his hands on his hip at the time he was shot, and said, "I will shoot," etc. The main question involved in the investigation before the jury was whether, under the evidence, the defendant was guilty of murder or voluntary manslaughter. Did the evidence show such a state of facts as would authorize the jury to find the defendant guilty of murder? Murder, as defined by our Code, is the unlawful killing a human being, in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied. Express malice is that deliberate intention, unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

In order to have reduced the killing of the deceased by the defendant, to the offense of voluntary manslaughter, there must have been some actual assault made by the deceased upon the defendant, or an attempt by the deceased to have committed a serious personal injury on the person of defendant, or other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or

malice, either express or *implied*. Provocation by words, threats, menaces, or contemptuous gestures, shall, in no case, be sufficient to free the person killing from the guilt and crime of murder. Now, if we take the evidence offered by the defendant in this case, as to the words, threats, menaces, or gestures of the deceased towards the defendant at the time of the killing, are the same sufficient under the law to free the defendant from the guilt and crime of murder? What are they? That the deceased put his hand on his hip and said, "I will shoot, you son of a bitch, if you touch my woman." These are the words, threats, menaces and gestures, which it is claimed, under the law, will free the defendant from the guilt and crime of murder in shooting the deceased. Only that, and nothing more. This Court will avail itself of the present occasion to announce to the public from this bench, with all the emphasis which its judgment can impart, that provocation by words, threats, menaces or contemptuous gestures, will, in no case, be sufficient to free a person who kills another by shooting him, from the guilt and crime of murder. The law so declares, and it is the imperative duty of the Courts so to administer it, for the protection of society and human life. Mere words, threats, menaces or contemptuous gestures, are no considerable provocation in the eye of the law, and, therefore, malice *shall be implied.*

We find no error in the refusal of the Court to charge the jury as requested, or in the charge as given, in view of the evidence contained in the record. The charge of the Court as to a reasonable doubt of the guilt of defendant, was in exact accordance with the ruling of this Court in the case of *Long vs. The State,* 38 *Georgia Reports,* 491. The doubt must be a doubt pertinent to the matter in issue on trial, arising out of the evidence, or the want of evidence. The charge of the Court that drunkenness could be looked to, to ascertain and determine the condition and state of the defendant's mind and to throw light upon the inquiry whether there was malice, was quite as favorable a charge for the defendant as he had a right to expect under the law and facts of the case.

Malone *vs.* The State of Georgia.

Whether the parties were strangers to each other, was a question of fact for the jury, and if they were, the law will imply malice when one stranger kills another stranger without any considerable provocation, the same as if they were not strangers, and there was no error in the refusal of the Court to charge the jury in relation to that question. There was no error as to the polling of the jury on the statement of facts certified to by the presiding Judge. When the jury brought in their verdict, defendant's counsel requested to have them polled. The Court directed the Solicitor General to take the verdict and read it in the presence of the jury; that being done, each juror was called and asked by the Court if the verdict as read was his verdict, and each juror answered that it was. The complaint is that the verdict was read to the jury by the Solicitor General before they were polled. The reading of the verdict in the hearing of the jury was right, so as to enable each juror to know what the verdict was before he was asked the question if he agreed to *that* verdict.

It does not affirmatively appear that the bailiff who attended the jury did eat or sleep in the same room with the jury, and the presiding Judge certifies that he did not know that he had done so. If such was the fact, it was incumbent on the defendant to have shown it by competent evidence, which the record fails to disclose.

There is sufficient evidence in the record to sustain the verdict of the jury. They were the exclusive judges of the credibility of the witnesses who were sworn on the trial of the case, and there was no error in overruling the motion for a new trial on the ground that the verdict was contrary to the evidence, and the weight of the evidence, according to the repeated rulings of this Court in similar cases. The fact of the killing of the deceased by the defendant was not disputed on the trial, and the only question for the jury was, whether the killing, under the circumstances as detailed by the witnesses, made him guilty of the crime of murder under the law, or guilty of an inferior grade of homicide, and they having

passed upon that question, we cannot say that their verdict was not right under the law and facts of the case.

The Court did not err in overruling the motion for a new trial on the ground of newly discovered evidence. The newly discovered evidence is merely cumulative, and a new trial will not be granted for newly discovered evidence merely cumulative in its character. What is cumulative evidence? Evidence is cumulative when it goes to the fact principally controverted on the trial, and respecting which the party asking for a new trial produced testimony on the trial of the cause: *Grubb vs. Kolb*, 37 *Georgia Reports*, 459. The newly discovered testimony of Stokes relates to the same facts which were controverted on the trial, as to what the parties said and did at the time of the shooting, and the same remark may be made as to the newly discovered evidence as to the defendant having been drinking. There was evidence of his having been drinking on the trial.

If the newly discovered evidence had been introduced on the trial, it is not at all probable that it could have produced, or that it ought to have produced, a different result under the law. The plea of insanity was not relied on at the trial, and it is too late now to fall back upon that defense after the trial, when the facts now sought to establish it could as well have been ascertained before the trial, by the exercise of ordinary diligence, as since the trial, if, indeed, he was insane before the killing, which the newly discovered evidence fails to establish, and it does not show that he was insane *at the time of the killing*.

After a careful and laborious examination of the evidence contained in the record, and the several grounds taken in the motion for a new trial, we are all of the opinion that the judgment of the Court below refusing a new trial should be affirmed.

Let the judgment of the Court below be affirmed.