### 488.   SMITH *v.* THE STATE.

While upon the hearing of a motion for new trial (where the sole ground of the motion complains that a member of the jury which convicted the accused was related by affinity to the prosecutor within the prohibited degrees, and upon the hearing affidavits are introduced supporting and disputing this ground) the trial judge is the trior of the facts in controversy, and this court will not control his decision as to the credibility of the witnesses, still, where all the evidence adduced upon the subject of relationship showed the juror to be related to the prosecutor within the ninth degree, a new trial should have been granted.

Indictment for arson, from Oglethorpe superior court—Judge Holden. March 14, 1907.

Argued May 27,—Decided June 26, 1907.

*Samuel L. Olive, Paul Brown,* for plaintiff in error.

*D. W. Meadow, solicitor-general, Sibley & McWhorter,* contra.

RUSSELL, J. The plaintiff in error was convicted, at the April term, 1906, of the offense of arson; his motion for new trial was refused, and the judgment of the lower court was affirmed by the Supreme Court. *Smith* v. *State, 125 Ga.* 296. Thereafter, on October 17, 1906, he filed an extraordinary motion for a new trial, upon the ground that one of the jurors who rendered the verdict finding him guilty was disqualified by relationship to the prose-

cutor. This motion was overruled on March 14, 1907, and upon the judgment denying a new trial error is assigned.

Affidavits were properly submitted by the movant, showing that the juror Webb was related by affinity to the prosecutor, Mr. Pittard, within the prohibited degrees; and a counter-showing establishing a more distant degree of relationship was made by the State. If the evidence submitted by the State on the hearing before the lower court had shown that there was no kinship, or that the relationship between the juror and prosecutor was within and beyond the prohibited degrees, we would have no difficulty in affirming the judgment refusing a new trial. Upon the authority of the decision in *Buchanan* v. *State,* 118 *Ga.* 751 (9), "where a ground of a motion for a new trial complained that a member of a jury which convicted the accused was related by consanguinity to the prosecutrix within the prohibited degree, which fact had been discovered by the accused since the trial, and upon the hearing of the motion affidavits were introduced to support this ground, and the State introduced affidavits to the effect that no such relationship existed, this court will not interfere with a finding by the trial judge, upon the issue of fact thus made, adverse to the contention of the accused." But the affidavits presented by the State on the hearing of the motion, instead of contradicting and disproving movant's contention that the juror Webb was disqualified, themselves established the juror's disqualification.

A juror related by consanguinity or affinity to either party to a cause within the ninth degree is disqualified from sitting in the case. This was expressly decided in *Ledford* v. *State,* 75 *Ga.* 857, and our examination has failed to discover any ruling in this State to the contrary. According to the evidence for the State, the juror Webb was related to the deceased wife of Pittard, the prosecutor, in the ninth degree, and several living children of Pittard and his deceased wife continue the kinship by affinity. According to the movant's showing, the juror Webb was a great grandson of David Barnett, who was a brother of Benjamin Barnett, Mrs. Pittard's grandfather. If we apply the diagram illustrative of lineal and collateral consanguinity, prepared by Blackstone (2 Bl. Com. 203), we find that Webb and Mrs. Pittard were related in the seventh degree by the civil law and in the fourth degree by the canon law adopted by use as part of the common law.

According to the State's counter-showing, the juror and the prosecutor's wife were related in the fifth degree by the canon law and within the ninth degree by the civil law, the relationship being exactly the same as that subsisting between Richard III and Henry VII, used by Blackstone as an example.

The following diagram shows the relationship as evidenced by the testimony for the State, the Roman numerals indicating kinship by the canon law and the Arabic figures the relationship by the civil law.

"The method of computing these degrees in the canon law, which our law has adopted, is as follows: We begin at the common ancestor, and reckon downwards; and in whatsoever degree the two persons, or the most remote of them, is distant from the common ancestor, that is the degree in which they are related to each other." 2 Bl. Com. 206. The degree of relationship which will disqualify a judge from sitting in a case is fixed by our Civil Code, §4045, and, as ruled in *Short* v. *Mathis*, 101 *Ga.* 286, is to be ascertained by the canon-law rule, but the quantum of kinship on the part of a juror which will disqualify has not been defined by statute in this State. The Penal Code, §973, recognizes kinship as a ground of challenge for cause. "On calling each juror, he shall be presented to the accused in such a manner that he can distinctly see him, and then the State, or the accused, may make either of the following objections: . . 4. That he is so near of kindred to the prosecutor, or the accused, or the deceased, as to disqualify him by law from serving upon the jury." But the degree of kinship which will disqualify is not declared in terms. So far as we are aware, however, the rule announced in the *Ledford* case has never been questioned. It was cited with approval in *McElhannon* v. *State*, 99 *Ga.* 680. In *Roberts* v. *Roberts*, 115 *Ga.* 261, Justice Cobb, after referring to 17 Am. & Eng. Enc. L. (2d ed.), 1124, where it is said that while at common law originally relationship in any degree by consanguinity or affinity worked a disqualification of the juror, later writers state that the relationship must be within the ninth degree, calculated according to the civil-law rules, then quotes with approval from the *Ledford* case, "The juror was disqualified, being a third cousin and within the ninth degree," and states that it is supposed that the ninth degree referred to is to be "calculated by the rules of the civil law, and not by the rules of the canon law, which are of force in this State in reference to matters of inheritance." But it matters not whether the degree of relationship be computed according to the civil law or the canon law, in neither event was Webb, the juror, qualified to try this case.

The degree of relationship to a party which will disqualify a juror is not the same as will disqualify a judge. At common law favor was not presumed in a judge, while originally the presumption as to a juror was that any relationship whatever, either by

affinity or consanguinity, would disqualify a juror, this rule being later modified so that the disqualification by reason of kinship extended no further than to include the ninth degree. The limitation of the disqualification of judges to cases where one or more of the parties to the cause may be of kin within the fourth degree was the adoption of an arbitrary rule by statute, regardless of the common law, while the rule as to the disqualification of jurors (in the absence of legislation on the subject) is the common law.

The relationship of a party to a judge is ascertained by the rules of the canon law, because of the adoption, as stated by Blackstone, of the common-law rule. But it matters not in this instance whether the degree of relationship be computed according to the civil or the canon law; in neither event, under the evidence submitted, was Webb a juror qualified to try this case. Counsel for defendant in error virtually concede this by putting the stress of the case on the proposition that even if the juror was disqualified, it was not properly an extraordinary ground for new trial and affords no sufficient reason for the grant of an extraordinary motion. The argument in support of this contention is drawn from the decision in *Cox* v. *Hillyer,* 65 *Ga.* 57 (2), in which it was held: "The extraordinary motions or cases contemplated by the statute are such as do not ordinarily occur in the transaction of human affairs, as when a man has been convicted of murder and it afterwards appears that the supposed deceased is alive, or where one is convicted on the testimony of a witness who is subsequently found guilty of perjury in giving that testimony, or where there has been some providential cause, and cases of like character." We think that the uncontradicted evidence of the juror's disqualification, and of the fact that this was brought to the attention of the court as soon as it was known or ordinarily could have been known, presented a good extraordinary ground of a motion for a new trial. There is no higher purpose to be subserved in the administration of the criminal law than that every defendant shall be accorded a trial by jury, and jury trial is a mockery unless the jury be not only impartial but also beyond just suspicion of partiality. It is not mere punishment, but punishment justly inflicted, which compels that respect for law which is essential to the prevention of crime.

It is earnestly insisted in the briefs of the learned counsel for the State that even if the disqualification of the juror is shown, and even if such disqualification would be good ground for granting an ordinary motion, it can not be classed as among the extraordinary grounds provided and recognized by law, and that nothing was submitted to the court showing that the result would probably be different on another trial. Counsel argue that "the question of the relationship of a juror not only ordinarily occurs in the trial of cases, but is of general and constant occurrence. And the motion in this case shows on its face that it did occur in this case and was inquired for." We will agree with counsel that the *inquiry* into the subject of the relationship of jurors,—questions as to such relationship, is a matter of almost daily occurrence in the courts. But in the opinion that the *discovery* of disqualification after counsel has called attention to the subject of relationship, and the trial judge has taken the pains to have an investigation in open court touching relationship, and the cautious juror's mind is again indirectly turned to any cause which might bias his judgment by the questions propounded on the voir dire, is a common or ordinary occurrence, we do not concur. We hold such a circumstance to be extraordinary, and the law has long so regarded it; for, contrary to the prevailing rule, it absolutely shuts its ears to the explanation that the juror was not aware of the relationship and that such relationship did not in any wise affect the verdict. The law will not hear or consider that the presence of the disqualified juror did not hurt the losing party. This ground of motion for new trial is extraordinary in the same sense as the ground mentioned in *Cox* v. *Hillyer,* supra, where one is convicted on the testimony of a witness subsequently found guilty of perjury in giving that testimony. It is lamentably true that perjury is not uncommon, but the law justly considers it an extraordinary circumstance that the falsity of testimony which has been credited by a jury and has induced a solemn verdict of guilty should be established.

The exact point decided in *Kelly* v. *Hall,* 50 *Ga.* 636, and *Cox* v. *Hillyer,* 65 *Ga.* 57 (which were applications for mandamus to compel the certification of second bills of exceptions), and in *Malone* v. *State,* 49 *Ga.* 210, and *Doyal* v. *State,* 73 *Ga.* 72 (cited in *O'Neil* v. *State,* 104 *Ga.* 543), is, that inasmuch as generally no

second bill of exceptions can be allowed where the judgment refusing a new trial has been affirmed, a second motion for new trial must be "an extraordinary motion or case" as specified in §1064 of the Penal Code. The rule as clearly stated in the first headnote in *Doyal* v. *State,* supra, is, that "After the trial of a cause by the jury and the return of a verdict of guilty and the refusal of a new trial by the circuit court, and the affirmance of that judgment by this court, the grounds of a second motion for new trial will be scrutinized closely, and must be laid in the very foundations of the purity of jury trial, to authorize the grant of such an application." Then is the presence and service of a juror clearly disqualified good ground for an extraordinary motion for a new trial; or, put more properly, does such a case present good extraordinary ground of a motion for a new trial? As has been held, and more than once, motions upon extraordinary grounds are not viewed with favor, especially when newly discovered evidence, generally merely cumulative, is the basis of the motion; and the distinct and close scrutiny with which motions for new trial upon extraordinary grounds are regarded is evidenced by the provisions of the Penal Code, §§1063, 1064. In the *Cox* and *Malone* cases cited supra, the extraordinary ground was newly discovered evidence, and there was a distinct holding that the evidence was merely cumulative. But in the *Doyal* case, supra, a new trial was ordered after the presiding judge had refused to interfere with a verdict which had been affirmed by the Supreme Court (70 *Ga.* 134), upon the sole ground of the disqualification of a juror, the objection to the juror, as in this case, being propter affectum, and the reason given (irrespective of the probable result on another trial) being that this ground was "laid in the very foundations of the purity of jury trial."

In *Beall* v. *Clark,* 71 *Ga.* 849 (although there was no extraordinary motion for new trial), one of the grounds of the motion was that one of the jurors was a half-brother of an interested witness. After a review of the evidence on this subject, Justice Hall, observing that the fact that the juror and the witness were intimate and of near kinship is the only circumstance which can cast a shadow of doubt upon the truthfulness of the juror's statement that he knew nothing of the witness's interest in the matter, nevertheless proceeds to deliver the opinion of the court as follows:

"The trial by jury can not be too carefully guarded, to protect it not only from unfairness, but also from any uncertainty on that score. Jurors should be above suspicion. Omni exceptione majores. On another hearing this wrong can be avoided. The defendants will be then left free to assail the witness, if they deem it advisable, and will not be trammelled in their defence by the presence of his kinsman upon the jury. There can be no doubt that he was an improper juror. 28 *Ga.* 439; 47 *Ib.* 538." If the juror Webb would be held disqualified in a civil case because his presence on the jury might trammel the defense by reason of his relationship to Pittard, how can less be held in a criminal case where the kinsman, Pittard. is the prosecutor, and the liberty of the citizen is involved?

One reason why a new trial is demanded where there is no doubt as to the disqualification of a juror (and where such disqualification is not waived by knowledge of that fact) is that the verdict is illegal and void. As held by the Supreme Court in *Georgia Railroad* v. *Cole, 73 Ga.* 713, "A jury composed of men who are not lawful men—men whose relationship to the parties renders them incompetent as jurors, can not render a lawful verdict. If the parties consent to the jurors or have knowledge of their incompetency, then they will be held to waive the same. It can not be said that the defendants in error have had their case tried; certainly not legally; and although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside."

Of course it has been uniformly held, with reference to extraordinary motions, that due diligence must be shown to have been exercised by the movant in ascertaining the disqualification, if possible, before the trial; and it must further appear that diligence was manifested by counsel in moving on these extraordinary grounds and in bringing the facts before the superior court as soon as discovered. Failure to apprize the court of the disqualification of a juror, discovered during the trial, as soon as the fact was ascertained by counsel, was held to be a waiver, in *Lampkin* v. *State, 87 Ga.* 516. No complaint of lack of diligence on the part of plaintiff in error or his counsel in this case can be made in the

present instance.  It is uncontradicted that the facts upon which the disqualification of the juror depended were first ascertained within one week before the extraordinary motion was presented and filed on October 17, 1906, which, according to the admission of counsel for the State in their brief, was the day following the judgment making the judgment of the Supreme Court the judgment of the lower court.

There is no merit in the suggestion that the exercise of a greater degree of diligence on the part of plaintiff in error and his counsel might have discovered the disqualification of the juror before the trial.    It is undisputed that the defendant's counsel requested the court to inquire of the jury as to the relationship to the prosecutor, and that the trial judge did this.  As said by Justice Cobb in rendering the opinion of the court in *Moore* v. *Farmers' Mutual Ins. Asso.*, 107 *Ga.* 209, "When parties to a case announce ready for trial, it is the duty of the court, if the case is one to be tried by a jury, to furnish a panel of jurors composed of persons competent to sit as jurors in the case.   When parties are furnished with a list of the jury, it is their duty, if they know that any of the jurors are disqualified, to call attention to the same, or the disqualification will be held to have been waived.  If they have reasonable grounds to suspect that any of the jurors are disqualified, it is their duty to call attention to the fact, so that due inquiry may be made of the panel.  Further than this they are not required to go.  Due diligence requires no more than this.  The rule in reference to such matters is thus stated by Judge Stephens in *Brown* v. *State,* 28 *Ga.* 439: 'He must make the objection at the right time, if he knows of the fact, but if he does not know of the fact nor have special reasons to believe it, he is not bound to offend every man on the panel by making random imputations against him.'  Parties are not required to make searching investigation out of court to determine whether the jurors who are summoned are disqualified in their cases.  Not only is such a duty not placed by the law upon parties and their counsel, but the contrary practice is to be encouraged, for obvious reasons."

In our opinion the movant's "case" fulfills all the requirements of a meritorious extraordinary motion for new trial, and he should have a new trial.                    *Judgment reversed.*