GEORGIA POWER COMPANY *v.* WATTS.

136

No. 11664.   MARCH 13, 1937.

*Colquitt, MacDougald, Troutman & Arkwright,* for plaintiff in error.

*G. Seals Aiken* and *Jo Johnson,* contra.

HUMPHRIES, Judge.   The Court of Appeals certified to this court the following questions:   (1) Is a judge disqualified to sit in a case in which a corporation is a party, on the ground that the judge's brother-in-law, who is necessarily related to him within the fourth degree by affinity, is a stockholder in the corporation?   (2) Is kinship of a judge to a stockholder of a corporation which is a party to the case, where the stockholder himself is not a party to the cause, a kinship to a party interested in the result of the case or matter, and which would, as provided in the

act approved March 28, 1935 (Ga. L. 1935, p. 396), disqualify a judge from presiding in or acting or serving in any case or matter where he is related by consanguinity or by affinity to any "party" interested in the result of the case or matter, within the sixth degree of relationship by consanguinity or affinity? (3) If notwithstanding a judge may be disqualified to sit in a case by reason of his kinship to a stockholder in a corporation which is a party to the case, can the disqualification be waived by consent of the parties so as to qualify the judge to sit in the case? (4) Can a corporation itself which is a party to a case, where all other parties to the case have waived the disqualification of the judge to preside or sit in the case on the ground of his relationship to a stockholder in the corporation, insist on the judge's disqualification, and thereby render the judge disqualified to sit in the case? (5) Can a corporation itself which is a party to a case, where the other parties to the case do not insist upon the disqualification of the judge to preside or sit in the case on the ground of his relationship to a stockholder in the corporation, insist on the judge's disqualification and thereby render the judge disqualified to sit in the case? (6) Is a judge disqualified to preside, act, or sit in a case in which his brother-in-law, who is not a party to the case, is the owner of "preferred stock" in a corporation which is a party to the case? (7) Is a judge disqualified to preside, act, or sit in a case in which his brother-in-law, who is not a party to the case, is the owner of "preferred stock" in a corporation which is a party to the case, where the preferred stock is stock which pays a fixed dividend or income out of the earned profits of the corporation?

1. "At common law the judge was not disqualified by relationship to a party or to a person interested in the result of the case," but was "disqualified only in a case where he was a party, or interested therein;" and that "seems to have been the rule in Georgia until the adoption of the Code of 1863. See Cobb's Dig. 460; Clayton's Dig. 39. By the provisions of that Code no judge was permitted to sit in any case or proceeding in which he was pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, or in which he had been of counsel, without the consent of all the parties at interest. Code 1863, § 199. These provisions of the Code of 1863 are now em-

bodied in the Civil Code, § 4045, which contains a further ground of disqualification, where the judge has presided in a case in an inferior judicatory and his ruling or decision is the subject of review." *Roberts* v. *Roberts,* 115 *Ga.* 259, 262 (41 S. E. 616, 90 Am. St. R. 108). The Code referred to in this opinion is commonly known as the Code of 1861. It was authorized by the act of December 9, 1858 (Acts 1858, p. 95), which provided for the codification of the laws of Georgia, "whether derived from the common law, the constitution of the State, the statutes of the State, the decisions of the Supreme Court, or the statutes of England of force in this State." It was adopted on December 20, 1860 (Acts 1860, p. 24), to take effect on January 1, 1862, but was postponed to January 1, 1863, by the act of December 16, 1861 (Acts 1861, p. 28). See also Acts 1858, p. 202; 1859, pp. 13, 405, 406; 1862, p. 22; 1864, p. 115; 1864-5, pp. 95-106. An act of December 19, 1860 (Acts 1860, p. 43) added to the common-law rules of disqualification relationship, without defining that term, and previous representation by the judge of either of the parties litigant in the case. The codifiers by virtue of the broad authority given them prescribed the degree of relationship to disqualify, and provided that no judge "can sit in any cause or proceeding in which he is" disqualified, "without the consent of all the parties in interest." An act of October 6, 1868 (Acts 1868, p. 129), authorized the judge to preside in cases in which he had been of counsel, with the consent in writing of the opposite party, unless he declined to do so. The act of August 10, 1881, disqualified the judge when the decision under review was that of the judge while presiding in an inferior judicature. Ga. L. 1880-81, p. 58. The method of computing the relationship of a party to a judge was the canon-law rule (*Smith* v. *State,* 2 *Ga. App.* 578, 59 S. E. 311), which, Blackstone says, "our law has adopted," and "is as follows: We begin at the common ancestor and reckon downwards: and in whatsoever degree the two persons, or the most remote of them, is distant from the common ancestor, that is the degree in which they are related to each other." 2 Bl. Com. 206; *Short* v. *Mathis,* supra. The various acts before 1933 which dealt with the disqualification of judges are combined in the Code of 1933, § 24-102, as follows: "No judge or justice of any court, no ordinary, justice of the peace, nor

presiding officer of any inferior judicature or commission, shall sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all the parties in interest: Provided, that in all cases in which the presiding judge of the superior court may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party or counsel agree in writing that he may preside, unless the judge declines so to do." (Acts 1801, Cobb, 460; Acts 1868, p. 129; Acts 1880-1, p. 58.) An exception to this rule is made in cases where no defense is filed, and neither party to the cause objects to the related judge. Acts 1933, p. 187; Code, § 24-111. "At common law, relationship to a party, either by consanguinity or affinity, was considered a ground of disqualification in a juror. Sir Edward Coke said that relationship in any degree was sufficient for this purpose, but later writers state that the relationship must be within the ninth degree, calculated according to civil-law rules." *Roberts* v. *Roberts,* supra. There is nothing in the Code which in terms provides what degree of relationship by consanguinity or affinity to the prosecutor, or the accused, or the deceased, or the person who was the victim of the crime on trial, or to a party in a civil case, will disqualify a juror. Code, § 59-804 (4); Code of 1910, § 4997. But the common-law rule prevailed in this State, in both civil and criminal cases, until the act of March 28, 1935. *Roberts* v. *Roberts, Smith* v. *State,* supra. That rule came to be regarded as the ninth degree according to civil law. By it "the reckoning was taken from one of the persons up to the common ancestor, and then down again to the other." *Watkins* v. *State,* 125 *Ga.* 143 (53 S. E. 1024).

Before 1935 the law with reference to the disqualification of a judge because of relationship to a party was different, as to degree and method of computation, from that of a juror. The act of March 28, 1935 (Acts 1935, p. 396) made the same rule as to degree of relationship and method of computation applicable to both judges and jurors. That act declared: "All judges, grand and trial jurors in the courts of this State, shall be disqualified to

preside, act, or serve, in any case or matter, when such judge or juror is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law; and relationship more remote shall not be a disqualification." While the caption of the act of 1935 uses the words, "to further define the qualifications of judges and jurors," it adds no new ground of disqualification, but deals only with the degree of relationship which will disqualify and the method of computing it. Therefore that act was not intended to and did not add to or take from the grounds of disqualification as contained in the Code, § 24-102, save as to the degree of relationship and the method of computing it. Section 24-102 is mandatory in its provisions, and forbids a judge disqualified by its terms to "sit in any cause or proceeding, . . without the consent of all the parties in interest." The latter clause is comprehensive, and includes a party to whom the judge is related as well as one to whom he is not. To hold otherwise would be to make nugatory a clear and unequivocal provision of the law. A judge should be removed as far as possible from probable grounds of criticism. Therefore he should not preside in a case in which he is disqualified, without the free and voluntary consent of all parties to the cause. That inhibition rests in a sound public policy expressly declared by statute. A judge should not only feel free and independent in the discharge of his official duties, but he should be removed from possible subconscious concern as to what others might think of his situation. If he should assume to act when one of the parties is related to him, he could hardly have that entire freedom of action which public confidence in the court demands. The case of *Roberts* v. *Roberts,* supra, was cited in Yazoo & Mississippi Valley Railroad Co. *v.* Kirk, 102 Miss. 41 (58 So. 710, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 968), involving the question of the disqualification of a judge. The court said: "This presents a question to this court of paramount importance to litigants in the courts of this State as well as to the general public. All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Not only must judges presiding over the courts be honest, unbiased, impartial, and disinterested in fact, but it is of the utmost importance that all doubt

or suspicion to the contrary must be jealously guarded against, and, if possible, completely eliminated, if we are to maintain and give full force and effect to the high ideals and salutary safeguards written in the organic law of the State."

2. The word "party" as used in the Code, § 24-102, and in the act of March 28, 1935 (Acts 1935, p. 396), is not restricted to the technical limitation of a party to the case, but includes those who are interested in the result of the case, although not parties of record. In *Short* v. *Mathis,* supra, it was held: "Fifth cousins equally removed from their common ancestor being related within the fourth degree of consanguinity, it follows that a judge of the superior court who is a fourth cousin of a person pecuniarily interested in the result of a pending case is disqualified to preside in the trial thereof." In *Roberts* v. *Roberts,* supra, it was held that a judge who is related within the prohibited degree to counsel for the applicant in an alimony proceeding in which an allowance for counsel fees is asked is disqualified from presiding, notwithstanding counsel had a binding contract with the applicant for the payment of fees commensurate with their services, whether the applicant for counsel fees were successful or not. The court referred to the Code of 1895, § 4045, and said: "Should the word 'party,' in the section of the Code just referred to, be given the technical and narrow meaning of one who is a party to the record and absolutely bound by the judgment in the case? Or should that word be construed more liberally, and include any one who is pecuniarily interested in the result of the suit, although not a party to the record and not necessarily bound by the judgment therein, notwithstanding he would be benefited by the judgment if rendered in a particular way? . . In the light of the rule which has been followed in this State with reference to a juror who is related to a person interested in the result of the suit, although not a party to the record, we think the proper construction to be placed upon the word 'party' in the section of the Code which declares when a judge shall be disqualified is the broad meaning which would include any one pecuniarily interested in the result of the case, and not the narrow and technical meaning which would limit the rule to a person who was a party to the record." In *James* v. *Douglasville Banking Co.,* 26 *Ga. App.* 509 (supra), the court held: "Where a judge is related by affinity to

one who is an officer and stockholder of a plaintiff corporation, by reason of the grandmother of the judge's wife and the grandmother of such officer having been sisters, the relationship is in the third degree, under the rule of canon law, and falls within the inhibition of section 4642 of the Civil Code [of 1910]. Such a judge is disqualified from sitting in a case between the corporation and an individual defendant, except with the consent of both parties at interest." The reasons for the disqualification of a judge who is related to a person interested in the result of a case having been analogized by the court to those applicable to a juror, much more should that now be proper under the act of 1935, which makes the grounds of disqualification applicable alike to judges and jurors.

3. Stock is the capital of corporations, which is usually divided into shares of definite value.. *Ordinary* v. *Central Railroad &c. Co.,* 40 *Ga.* 650. In *Hazlehurst* v. *Savannah &c. Railroad Co.,* 43 *Ga.* 13, 53, the court expressed the opinion, that, "If there be no express prohibition against such issue in the charter, a corporation has power to issue" preferred stock, "keeping within the amount of stock limited by the charter." "Stock represents an interest in the property," and the purchaser of shares "acquires, not merely the paper script, but the stockholder's interest in the property committed to the director's care." *Oliver* v. *Oliver,* 118 *Ga.* 362 (5) (supra). In *Georgia Railroad &c. Co.* v. *Wright,* 125 *Ga.* 595 (supra), the court said: "Every holder of a share of stock in any corporation is a property owner. Shares of stock are bought and sold. They are bequeathed to legatees and descend to heirs. They have all the qualities of every other character of property, except that they have no inherent value. The value of the shares depends upon the value of the property of the corporation which issues them." In *Reid* v. *Eatonton Manufacturing Co.,* 40 *Ga.* 98, 104 (2 Am. R. 563), the court said: "We do not think dividends already paid out are a trust fund for the payment of debts, which may be followed by creditors in a court of chancery and recovered for that purpose. But we will not say that in a proper case, where the corporation is insolvent, and the capital stock, upon the faith of which the credit was given, has become insufficient for the payment of the debts of the company, a case might not be made where a court of equity would enjoin the payment of future dividends to the stockholders, till the debts

are paid. Nor do we question the right of the creditors, in a court of equity, to compel stockholders to refund dividends made to them out of the capital stock itself. The whole capital stock is a trust fund for the payment of the debts contracted upon the faith of it, which the stockholders can not divert from that object, by distributing it as dividends, or otherwise dividing it among themselves." "The term 'preferred stock,' according to general legal interpretation, is stock which entitles the holder to receive dividends from the earnings of the company before any dividends are paid on the common stock. By a 'dividend' is meant money paid out of its profits by a corporation to its stockholders; and a preferred dividend is a dividend paid to one class of stockholders in priority to that to be paid to another class." *Coggeshall* v. *Georgia Land & Investment Co.*, 14 *Ga. App.* 639 (supra). "As a general rule, preferred stock in a corporation entitles the owner to dividends only from the income or earnings of the corporation issuing it, in preference to the owners of common stock," and "an agreement of a corporation to create a lien in favor of preferred stockholders and to thus give them a preference over general creditors of the corporation, in the absence of statutory authority, is illegal." *Jefferson Banking Co.* v. *Trustees,* 146 *Ga.* 383 (supra). Holders of common and preferred stock being owners in common of the capital of the corporation, it follows that relationship of a judge to either within the prohibited degree would disqualify him to try the case.

4. While a judge is disqualified to preside, act, or serve in any case or matter when he is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil-law, that disqualification may be waived. In *Shope* v. *State,* 106 *Ga.* 228 (supra), the court said: "The judge who tried the case was a nephew of two stockholders of the Trion Manufacturing Company. This fact was known to counsel for the accused before the trial began. After it had proceeded for at least a day, and after most of the evidence had been introduced, counsel for the accused for the first time raised the question of the competency of the judge to preside at the trial. Granting that the judge was disqualified, we are of the opinion that, in view of the circumstances above stated, this point was waived. It ought to have been made when

the case was called for trial." In *Adams* v. *Overland-Madison Co.,* 27 *Ga. App.* 532 (supra), it was held: "If the fact that the judge had been one of the original applicants for the charter could itself be taken as sufficient to establish the fact that he was a stockholder at the time the case was tried, any such disqualification must be accounted as impliedly waived." However, one need go no further than the statute itself to show that disqualification of a judge on account of relationship to a party to the case may be waived. The Code, § 24-102 (Code of 1895, § 4045), provides that a judge who is disqualified by statute shall not sit in any cause or proceeding in which he is disqualified under the provisions of that section, "without the consent of all the parties in interest." In *Shope* v. *State,* supra, the court said: "Section 4045 of the Civil Code in effect declares that a judge disqualified by reason of relationship may nevertheless preside with the consent of all the parties at interest. This section further provides that where a judge has been employed as counsel in a case before going upon the bench, he can not preside in that case unless 'the opposite party or counsel agree in writing that he may preside;' but consent that a judge disqualified by relationship may preside need not be in writing." The act of March 28, 1935 (Acts 1935, p. 396), was not intended to and did not prevent interested parties from waiving the disqualification of a judge. Such a waiver may be effected expressly by agreement or impliedly by proceeding without objection with the trial of the case with knowledge of the disqualification.

5. At common law a judge was not disqualified by relationship to a person interested in the result of the case, but relationship in any degree to a party to the case disqualified a juror. Before 1935 relationship to a party interested in the result of the case within the fourth degree according to the canon-law rule disqualified a judge, and like relationship within the ninth degree according to the civil or common-law rule disqualified a juror. By the act of 1935, relationship to judge and juror alike was restricted to the sixth degree, according to the civil-law rule.

The question of what amount of interest of a kinsman in a corporation would disqualify a judge when the corporation is a party to the case has not been declared by legislative enactment or determined by any decision of this court. That question is not

without difficulty, whether viewed from a legislative or a judicial point of view. A small percentage of interest in one case might be greater than the entire amount involved in another case. Moreover, the importance of a case can not always be judged by the amount involved. Is not the question of the quantum of interest of a kinsman in a corporation which should disqualify a judge when the corporation is a party to the case one worthy of the attention of the law-making authorities of the State? Absent such attention, is it not likely that the administration of the law may be often hampered, if not unreasonably delayed, when corporations with numerous stockholders are involved?

From what has been said it follows that all of the certified questions must be                    *Answered in the affirmative.*

*Beck, P. J., and Bell, Jenkins, Graham, and Worrill, JJ., concur.*