## 11835

## LANCASTER COTTON MILLS v. SOUTH CAROLINA TAX COMMISSION *ET AL.*

### (129 S. E., 429)

TAXATION—STATE TAX COMMISSION HELD UNWARRANTED IN REFUSING TO PERMIT DEDUCTION ALLOWED BY FEDERAL AUTHORITIES IN COMPUTING INCOME TAXES.—Where Federal income tax return, made by affiliated companies for fiscal year ending June 30, 1921, disclosed a loss of approximately $250,000 during last half of year of 1920, and profits of $50,000 during first half of year of 1921, resulting in net loss of $200,000, which was charged against profits in making return for fiscal year ending June 30, 1922, and allowed by Federal authorities, *held,* under Act March 13, 1922 (32 St. at Large, p. 898), § 2, adopting Federal Income Tax Law in the State, and providing for State tax equivalent to one-third of Federal tax, State Tax Commission was unwarranted in refusing to permit a like deduction in making State return for fiscal year ending June 30, 1922.

Controversy without action under the original jurisdiction of the Supreme Court between the Lancaster Cotton Mills, petitioner, and the South Carolina Tax Commission, and individual members thereof, respondents.   Decree for petitioner.

*Messrs. Grier, Park & McDonald,* for petitioner, cite: *S. C. Income Tax Act of 1922 compared to Federal Act of November, 1921:* 122 S. C., 169; S. C. Stat., 1922, No. 502.   *Tax Commission to follow requirements of Federal Act and Treasury Regulations:* 122 S. C., 169; S. C. Stat., 1922, No. 502.   *Income Period:* 85 S. C., 518; Const. of 1895, Art. 10, Sec. 2.

*Mr. J. Fraser Lyon* for the respondents.

September 22, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

This is a controversy submitted without action.   The petition of the Lancaster Cotton Mills, made in behalf of itself

and Ft. Mill Manufacturing Company and Lancaster Light & Power Company, all of which are affiliated, shows:

That the returns made under the requirement of acts of Congress under the regulations of the Treasury Department were made by it in its behalf and in behalf of the other companies mentioned and are consolidated returns. That, since the year·1917, income tax returns have been made by it to the Treasury Department of the Federal Government on a fiscal year basis; this fiscal year commencing on the 1st of July and ending on the 30th day of June of each year, and that it continuously made such returns, up to and including the fiscal year 1923-1924, alleging that it has a right to make such returns under the acts of Congress. That such returns were made by the petitioner and its two affiliated corporations, in accordance with the requirements of the acts of Congress, and regulations pursuant thereto, for its fiscal year commencing on July 1, 1920, and ending on June 30, 1921, which return was accepted by the officials of the Treasury Department of the Federal Government, subject alone to corrections of errors and mistakes, if any. That by such return, commencing July 1, 1920, and ending June 30, 1921, no tax accrued or was owing the Federal Government, and it was not required to pay any income tax to the Treasury Department of the Federal Government for the fiscal year 1920-21. That on April 29, 1922, the petitioner for itself and its affiliated corporations named, filed with the South Carolina tax commission an affidavit showing that for the fiscal year 1920-21, it paid no income tax to the Federal Government, and that no income tax had accrued to the Federal Government for the fiscal year 1920-21. That it continued to make returns for itself and its affiliated corporations for the next succeeding fiscal years, commencing July 1, 1921, up to and including the fiscal year commencing July 1, 1921, and ending June 30, 1922, and up to and including its fiscal year commencing July 1, 1923, and ending June 30, 1924, which returns have been re-

ceived and accepted by the Treasury Department of the Federal Government, subject alone to the correction of errors and mistakes, if any, and that, for like periods, for itself and for its affiliated corporations, it likewise filed with the South Carolina tax commission a duplicate of the returns which it had filed with the Federal Government for its fiscal years last named. That by its return to the Treasury Department of the Federal Government for its fiscal year beginning July 1, 1920, and ending June 30, 1921, it showed a loss of $201,979.39, which, under the acts of Congress and regulations of the Treasury Department had been actually sustained, and that by its return for the fiscal year beginning July 1, 1921, and ending June 30, 1922, filed with the Treasury Department of the Federal Government, and also a duplicate of the same with the South Carolina tax commission, it showed an income of $264,002.60, against which was credited that part of the loss for the fiscal year commencing July 1, 1920, and ending July 30, 1921, which, according to the provisions of the acts of Congress and the regulations of the Treasury Department in regulation thereof, was fixed as accruing in the first 6 months of the year 1921, to wit, $100,989.69, leaving the net taxable income for the fiscal year beginning July 1, 1921, and ending June 30, 1922, of $163,012.91 upon which a tax was paid to the Treasury Department of the Federal Government of $18,338.91, and a tax of one-third of this amount was paid to the South Carolina tax commission.

The petitioner further sets forth the income tax paid to the Federal Government and the income tax paid to the State of South Carolina, respectively, for the next two succeeding fiscal years ending June 30, 1924, and further alleges:

That the South Carolina tax commission refused to accept or recognize the income tax returns made by the petitioner to the Treasury Department of the Federal Government for the fiscal year 1920-21, but had an audit made of

petitioner's books and changed the inventories from a cost to a market basis, and set up inventories from the books of the petitioner as of date December 31, 1920, to the middle of the fiscal year, and from such changed inventories determined that for the last 6 months of petitioner's fiscal year 1920-21, to wit, from January 1, 1921, to June 30, 1921, there had been made and earned a taxable income of $201,500.50, on which it demanded the sum of $6,007.18 income tax for this 6 months' period. "That for the purpose of making income tax returns the inventories of petitioner were made and set up by it at the end of each fiscal year from year to year, and its annual net income or losses are determined by reference to these inventories which have been used as a basis of making income tax returns to the Treasury Department of the Federal Government uniformly since 1917, up to and including the fiscal year 1923-24. That petitioner from June 30, 1920, to December 31, 1920, both inclusive, as appears from its books, sustained a loss of approximately $250,000; and from January 1, 1921, to June 30, 1921, both inclusive, earned a profit, as appears from its books, of approximately $50,000. That for the fiscal year 1920-21 it sustained and incurred a net loss of $200,000.

"(13) That an additional tax and interest was assessed by the South Carolina tax commission against petitioner and its two affiliated corporations for the fiscal year 1921-22 of $9,607.25 because the South Carolina tax commission disallowed the credit on account of losses sustained during its fiscal year 1920-21 against its income for its fiscal year 1921-22, which credit was allowed by the Federal Government as a loss for the first 6 months of 1921, pursuant to the terms and provisions of the act of Congress and regulations of the Treasury Department in that behalf.

"(14) Petitioner contends that the issues are:

"(a) Whether, in arriving at net income of a corporation whose returns are made on a fiscal year basis the provisions

of the acts of Congress known as the 1921 Income Tax
Law and regulations of the Treasury Department in pur-
suance thereof are binding on the South Carolina tax com-
mission in the determination of what portion of total in-
come or loss for the fiscal year commencing July 1, 1920,
and ending June 30, 1921, should be charged as income or
loss for that portion of the fiscal year falling in the calendar
year 1921.

"(b) Whether the South Carolina tax commission is
required to credit against the income for the fiscal year
1921-22 that loss which the Treasury Department of the
Federal Government allowed as a loss as accruing from
January 1, 1921, to June 30, 1921, which the Treasury
Department of the Federal Government arrived at and al-
lowed pursuant to the provisions of the acts of Congress,
known as the 1921 Income Tax Laws, and the regulations
of the Treasury Department in reference thereto."

"Contentions of the Tax Commission.

"The South Carolina tax commission contends that the
proper method for calculating the tax for the first 6 months
of the year 1921 is to commence the calculation with Jan-
uary 1, 1921, and ending it with June 30, 1921, disregard-
ing whatever may have transpired during the calendar year
1920, even though such later period is embraced in peti-
tioner's fiscal year of 1920-21 return to the Federal Govern-
ment."

The State of South Carolina has adopted the Federal
Income Tax Law, as will be seen by reference to the Act of
the General Assembly approved March 13, 1922, particu-
larly Section 2 of the Act, and as to which it is said in
*Santee Mills v. Query et al.,* 122 S. C., 158; 115 S. E., 202:

" 'The provisions of one statute may be made applicable
to another by reference to the former in the latter, in the
absence of constitutional restriction.' * * * The Federal
Income Tax Law, referred to in the State Act, is as fully
effective in the State of South Carolina for the purposes of

the national government as if it had been reenacted *totidem verbis* by the General Assembly of South Carolina. * * * The State tax commission has no power delegated to make any rules or regulations inconsistent with the law enacted or for any other purpose than to carry out the legislative will expressed in statutory form."

In *Santee Mills v. Query et al, supra,* this Court construed and interpreted the State Income Tax Act for raising revenue, as follows:

"First, all persons, firms, partnerships, corporations, and trustees for persons or estates, liable to the payment of a federal income tax, are required to pay to the State as income a sum equal to 33 1/3 per cent of the amount required to be paid as income tax to the United States Government.

"Second, for the purpose of graduating such tax, of determining the amount thereof, and of prescribing the method, means, and manner of its assessment and collection, the provisions of the Act of Congress of the United States approved November 23, 1921 (42 Stat., 227), relating to levy, assessment, and collection of income tax by the United States Government, and acts amendatory thereof, passed and approved prior to the approval of the State act, together with the rules and regulations of the Department of Internal Revenue promulgated by virtue of such acts of Congress and which are not in conflict with the provisions of the State act, are adopted and enacted as if set forth in so many words.

"Third, that the duties and powers of the Commissioner of Internal Revenue and the authority given to the Internal Revenue Department by said Federal Income Tax Act of November 23, 1921, and existing acts amendatory thereof, are imposed and conferred upon the tax commission of this State in so far as applicable, and the State tax commission is authorized and empowered to make such rules and regulations 'not inconsistent with law' for the enforcement of the powers and authority given under the terms of the act as they may deem necessary."

31—S. C. R.—132.

The agreed statement, under which this matter is brought to the consideration of the Court, says: "There is no contention as to the correctness of any figures. The contention is as to the method adopted by the South Carolina tax commission." And, while the remedy desired by the petitioner is a writ of injunction enjoining and restraining the collection of the additional tax referred to in the petition, it is agreed between the parties to the controversy that the tax will not be enforced pending the hearing and adjudication of the questions involved, and this will apply to other mills referred to in the agreed statement, which have made similar returns.

It will be seen by reference to the statement that during the last half of the year 1920 the petitioner suffered a loss of approximately $250,000, and that from January 1, 1921, to June 30, 1921, it made a profit of $50,000, or for the fiscal year 1920-1921 it sustained a net loss of $200,000.

The South Carolina tax commission, it will be noted, disallowed the credit on account of losses sustained for the fiscal year 1920-21 against its income for the fiscal year 1922. But this credit was allowed by the Federal Government as a loss for the first 6 months of 1921. The Federal Government accepted the return of the petitioner and recognized that it had suffered a loss and that no tax was due it. The State tax commission, declining to recognize this return, adopts a different basis, sets up the inventories of the petitioner, and by its method of computation claims that the petitioner should pay $6,207.18 income tax for the 6 months commencing January 1, 1921.

Since the Federal statute and the Federal rules and regulations govern, if the contention of the State tax commission should prevail, then this statute and these regulations would be set aside, and regulations made by the State tax commission would be substituted in their stead, and a tax would be collected by the State, when none is found to be due the Federal Government, and the State could only, in any event,

collect a sum equal to 33 1/3% of the amount which was paid to the Federal Government, and, when no tax is exacted, or found to be due by the Federal Government, none can be collected by the State tax commission.

The fact that the corporation might make an affidavit, instead of a formal return, as was done in this case, cannot alter the status of the case. It would appear from the terms of the act that a taxpayer may make his returns upon either a calendar or a fiscal year basis, and that the income shall be computed upon the basis of the taxpayer's annual accounting period, in accordance with the method of accounting which he has employed in keeping books.

It follows, therefore, that, since the State tax commission is governed by the acts of Congress and the rules and regulations made in pursuance thereof, and since the Federal Government has received and approved the income tax return made by the petitioner based on the fiscal year commencing July 1, 1920, and ending June 30, 1921, it was the duty of the State tax commission to receive and approve such return and to credit against the income for the fiscal year 1921-22 that loss which the Treasury Department of the Federal Government allowed as a loss, as accrued from January 1, 1921, to June 30, 1921, and that the basis of taxation set up by the State tax department cannot prevail.

The State tax commission will therefore make its books and rules and regulations conform to the Federal Statute and the Federal rules and regulations promulgated in pursuance of the statute.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. JUSTICE MARION (concurring): The State Income Tax Law went into effect on March 13, 1922 (32 Stat. at Large, 896).

The income tax required to be paid to the State in 1922 was one-third of the tax required to be paid to the United States government in 1922. The tax required to be paid

the United States in 1922 was the tax on net taxable income shown by the return made by the person or corporation in 1922. The net taxable income, shown by the return made in 1922, upon which the tax became payable in 1922, might, under the Federal law, be either the net taxable income for the next preceding calendar year (December 31, 1920, to December 31, 1921), or the net taxable income for the next preceding fiscal year of the firm or corporation making the return. Thus, in the case of the petitioner here, the return to the United States in 1922 showed the net taxable income for the next preceding fiscal year of the corporation, running from June 30, 1920, to June 30, 1921, and its liability to the United States for income tax payable in 1922 was determined upon the basis of that return. According to that return it is alleged that the petitioner sustained a loss in 1920 (from June 30 to December 31), of about $250,000, and earned a profit in 1921 (from January 1 to June 30) of about $50,000. Its return made in 1922 to the Federal Government, therefore, showed a net loss of about $200,000 for the next preceding fiscal year, and an entire absence of any liability to the United States for an income tax payable in 1922.

The State tax commission does not dispute that under the Federal law the petitioner's liability to the Federal Government for any income tax payable by it in 1922 was determinable upon the basis of its return in 1922 for its next preceding fiscal year, running from June 30, 1920, to June 30, 1921. But it is contended that it was the intent of the State Legislature, evidenced by the language of Section 3 of the State Act, to impose the State tax upon all net income actually earned in the year 1921, and that, so far as the State is concerned, net income earned in 1921 is not subject to offset or deduction on account of losses occurring in such part of a fiscal year as was embraced in the year 1920; that is, in the petitioner's case it is contended that "the proper method for calculating the tax for the first 6

months of 1921 is to commence the calculation with January 1, 1921, and end it with June 30, 1921, disregarding whatever may have transpired during the calendar year 1920, even though such latter period is embraced in petitioner's fiscal year of 1920-21 return to the Federal Government."

While there are expressions in Section 3 of the Act which lend considerable force to that contention, I am satisfied that a sound construction of the Act as a whole requires the interpretation that the tax payable to the State in 1922 was one-third of the tax payable to the United States Government in 1922. If by reason of losses in 1920—that is, in such period of its next preceding fiscal year as was embraced in 1920—no tax was payable to the United States Government by this petitioner in 1922, none was payable to the State. If, on the other hand, a tax had been payable to the United States in 1922, on account of the net taxable income earned by this petitioner during the fiscal year running from June 30, 1920, to June 30, 1921, even though the whole of such net taxable income had been earned in the part of the fiscal year falling with 1920, the State would have been entitled to its one-third of the tax so payable to the national government; that is, in the view indicated, if the petitioner here had lost $50,000 during the 6 months of its fiscal year falling in 1921, and had earned $100,000 during the 6 months falling within 1920, it would have been liable to pay in 1922 to the United States the tax on its net income for the whole of its fiscal year amounting to $50,000, and would likewise have been liable to the State for one-third of the tax so paid to the national government. The rule, so applied, working both ways, could work no injustice to the State, and I am satisfied furnishes the test of liability which the Legislature intended to apply.

For the reasons indicated, I concur in the opinion of Mr. Justice Purdy.

MR. JUSTICE COTHRAN concurs.