13950

PACOLET MFG. CO. v. QUERY ET AL.

(177 S. E., 653)

Messrs. Perrin & Tinsley, for petitioner,

*Messrs. John M. Daniel, Attorney General,* and *J. Fraser Lyon,* for respondents,

November 22, 1934.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

This is a most interesting and unusual case and the questions raised show a thorough knowledge of the tax laws and the decisions affecting the same.

The Pacolet Manufacturing Company brought its petition in the original jurisdiction of the Supreme Court praying for a mandamus and also an injunction, the mandamus being to compel the South Carolina tax commission to accept the payment of a license fee of $6,000.00 on its capital stock and to restrain the South Carolina tax commission from collecting the additional amount attempted to be assessed upon the capital stock of the corporation.

The petition is dated the 1st day of June and upon that petition Hon. M. L. Bonham, Associate Justice of the South Carolina Supreme Court, on June 4, 1934, issued an order requiring the South Carolina Tax Commission to file a return to said petition within seven days from the service of the order to show cause at the June term of the Supreme

Court why the relief prayed for in the petition should not be granted. Under this same order the South Carolina Tax Commission was restrained from attempting to collect the license tax assessed upon the capital stock of the Pacolet Manufacturing Company.

The return of the South Carolina Tax Commission was in the form of a demurrer which alleged that the tax levied and sought to be collected was in accordance with Section 2681 and Section 2690-A (b) Vol. 2, Code of Laws of 1932, and Section 9 (b), Act No. 406, approved the 31st day of May, 1933 (page 574). The last-named act was an act to raise revenue in the year 1933 and carried provisions similar to those in the Code.

There are two questions raised in the petition.

1. Whether, under the law, levying a tax upon the capital stock of the petitioner, it is proper to include the capital stock which consists of stock issued by way of stock dividend.

2. Whether, under the law of South Carolina, the tax Commission has the right to assess said license tax against so much of the capital of the corporation as is invested in the property in the state of Georgia.

We will take the questions up in order.

The Pacolet Manufacturing Company was chartered by an act of the Legislature February 9, 1882, with an original capital stock of $100,000.00 and authority to increase this capital stock to $5000,000.00, and the sum of $500,-000.00 was duly subscribed and paid for in cash or its equivalent by the stockholders.

In 1891, application was made in due form of law to the General Assembly for permission to increase the capital stock to $1,000,000.00 and this was granted, and $200,-000.00 additional was subscribed to the capital stock prior to 1895, and, in 1900, the remaining part of this additional capital stock was subscribed, making the total capital stock of the corporation $1,000,000.00 at that time.

On July, 1903, by proper resolution, the capital stock was increased to $2,000,000.00 and $1,000,000.00 of first preferred stock was subscribed and paid in in cash or its equivalent and duly issued.

On July 19, 1909, the capital stock was further increased to $3,000.000.00, the extra $1,000,000.00 being second preferred stock and paid for in cash or its equivalent. These two issues of preferred stock, that is to say, of 1903 and 1909, were retired in 1920 and 1922.

On March 6, 1920, the capital stock was further increased to $4,000,000.00 and $1,000,000.00 was issued in common stock. In May, 1920, there was issued $1,000,000-.00 to the common stockholders in script or stock dividend of $1,000,000.00 preferred stock, and this amount was paid for out of the surplus of the corporation, and in May, 1923, similar action was taken issuing $1,000,000.00 in script stock dividend preferred stock out of the surplus.

So it will be observed that on May 14, 1923, the entire capital stock of the Pacolet Manufacturing Company consisted of $4,000,00.00, $2,000,000.00 of which had admittedly been paid in cash or its equivalent by the stockholders and $2,000,000.00 of which had been issued to the stockholders out of the surplus or earnings of the corporation by way of a stock dividend.

The contention of the Pacolet Manufacturing Company is that although the capital stock of said corporation appears as $4,000,000.00 that only $2,000,000.00 of the same is taxable by way of license on the capital stock for the reason that $2,000,000.00 was merely a transfer from the surplus fund to the capital stock fund by the issuance of certificates to the shareholders presumably in the proportion to the holding of such shareholders.

The petitioner relies very strongly upon the case of *Eisner v. Macomber,* 252 U. S., 189, 40 S. Ct., 189, 64 L. Ed., 521, 9 A. L. R., 1570.

The history of this case is rather interesting both from a legal and a political standpoint. The Constitution of the United States had been amended by the Sixteenth Amendment which is as follows:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

This amendment was ratified on the 25th of February, 1913, but on account of the early plunging of the world into a terrific war and the corresponding depression which usually attends such early warlike movements, there was no agitation about the income tax amendment when it was first passed.

When the war assumed such proportions that even the munitions manufacturers were fearful of the loss of their money and the entire civilized world was having its substance wasted on the battle fields of Europe and the fine young men of the world were being slaughtered literally by the millions, prices of materials, foods, and other necessities mounted to soaring heights and the war profiteers and those who were engaged in legitimate commercial endeavors began to reap a golden harvest, nourished by the tears of widows, the blood of human beings, and the distress of mankind. Then the income tax amendment became important. Enormous profits were being accumulated, tremendous surpluses were being piled up, and some of the people who were entitled to receive the surplus began to formulate plans to escape payment of income taxes. The case of *Eisner v. Macomber* was brought on the theory that where stock dividends were issued out of the surplus of a corporation, that the party receiving the stock dividend could not be charged profits on his income tax provided such stock dividend was issued lawfully and in good faith out of the surplus of the corporation. The Supreme Court of the United States very properly held that a stock dividend was not taxable as noth-

ing and had been given to the stockholder save and except evidence of the fact that he owned a certain portion of the surplus earnings. The Supreme Court of the United States further held that such tax would be, in effect, a tax on the stockholders' undivided accumulated earnings and could not, therefore, be permitted.

This case is authority for no other proposition than that and the United States Supreme Court does not hold that in allowing and permitting these earnings to be transferred into dividend stock, that the stock to which the earnings are transferred is not subject to whatever tax might be lawfully levied upon such stock.

The whole issue here revolves around the question as to what constitutes capital stock and when the same is taxable and when it is not taxable by way of license. The petitioner earnestly contends, and with great force, that the statute says that there shall be levied an annual license fee upon each dollar paid to the capital stock of said corporation, and, as the $2,000,000.00 was issued in stock dividends rather than paid in in cash or its equivalent, that this $2,000,000.00 of stock dividend certificates should not be taxable under the license provision by the tax commission.

There is no question that all tax laws must be construed against the taxing power and in favor of the taxpayer where there is any doubt in the mind of the Court. This is a salutary rule and one which is for the protection of the taxpayer against the arm of the taxing body. But in order to invoke this principle, there must be some doubt in the matter.

In this case the Pacolet Manufacturing Company elected, through its proper authorities, instead of paying its stockholders the cash dividend, to issue to the stockholders additional capital stock, and, in doing so, they no doubt complied with the provision of the Code that capital stock issued must be paid for in cash, labor, materials, or its equivalent. We, therefore, presume that for

each dollar issued by way of stock dividend, there was a cash equivalent to stand behind said issue. The corporation and its duly constituted authorities, having elected to transfer the surplus fund to capital stock which made said dividend stock not taxable as income under the Federal or the State law, cannot now escape the State license tax by saying that this stock is still surplus.

As to the second question involved, it is admitted that the Pacolet Manufacturing Company is a corporation duly organized and existing under and by virtue of the laws of the State of South Carolina and is, therefore, what is commonly designated as a domestic corporation with its principal office in South Carolina and its charter held under the law of South Carolina. The Pacolet Manufacturing Company has two plants, one located near Pacolet, in Spartanburg County, and the other located at New Holland, near Gainesville in the State of Georgia, both plants are engaged in the manufacture of finished cotton goods and are commonly designated as cotton mills.

The petitioner takes the position that to assess the tax on that part of the capital stock which is represented by the Georgia investment and wholly beyond the borders of the State of South Carolina is a burden to interstate commerce and is in violation of the Fourteenth Amendment of the Constitution of the United States. The cases cited in petitioner's brief refer to nonresident or foreign corporations and do not refer to domestic corporations. The rule is well settled that the manufacture of cotton goods is not in itself interstate commerce, nor does the fact that these things are afterward shipped and used in interstate commerce make their production a part thereof. Under any other view, everything would be interstate commerce that is capable of being shipped in such commerce. As we understand interstate commerce, it has no reference to the products which are shipped in such commerce, but rather to the act of shipping itself, and, of course, when an article is delivered for

the purpose of being transported from one state to another, it becomes an article of interstate commerce or the instruments by which it is transported are engaged in interstate commerce. Railroads, ship lines, bus lines, telegraph lines, and telephone lines are all instruments of interstate commerce, but an article does not become fixed with that characteristic until it is actually delivered for transportation or is being transported between the states. The Pacolet Manufacturing Company manufactures goods which are capable of becoming a part of interstate commerce, but in themselves said goods cannot be designated as interstate commerce until they are impressed with that characteristic.

No decision which has been cited holds that a state has not the right to levy upon a domestic corporation a license tax. If the Pacolet Manufacturing Company desires to escape the taxation of South Carolina as to its license, it could operate one plant under a Georgia charter and one plant under a South Carolina charter, but this it does not attempt to do. It operates both plants under a South Carolina charter, and this being the State of its incorporation, it is subject to the tax laws of this State.

The judgment of this Court is that the petition of petitioners be refused, the writ of injunction vacated, and the writ of mandamus denied.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.