### 17335

J. A. ROPER and FRANCES G. ROPER, Appellants, v. SOUTH CAROLINA TAX COMMISSION and OTIS W. LIVINGSTON, Chairman, JAMES W. CRAIN, JAMES H. SULLIVAN, JAMES A. CALHOUN, JR. and FRANCIS M. PINCKNEY, Constituting the Members of The South Carolina Tax Commission, Respondents

(99 S. E. (2d) 377)

588

*Messrs. Robert A. Dobson, Jr.,* of Greenville, and *Julien D. Wyatt, Felix L. Finley, Jr.* and *John T. Gentry,* of Pickens, *for Appellants,*

*Messrs. T. C. Callison, Attorney General, James M. Windham, Assistant Attorney General,* and *Don L. Odom, Legal Assistant, South Carolina Tax Commission,* all of Columbia, *for Respondent,*

July 30, 1957.

Moss, Justice.

J. A. Roper and Frances G. Roper, husband and wife, the appellants herein, who had filed a joint income tax return for the year 1951, brought this action against the South Carolina Tax Commission, the respondent herein, under and

pursuant to Title 65—Sections 2661-2, 1952 Code of Laws of South Carolina, to recover certain income tax and interest thereon, which appellants had paid under protest.

It appears from the complaint that in 1929 Roper Motor Company was organized as a business corporation under the laws of this State and had an authorized capital stock of $6,000.00, divided into 60 shares of common stock, all owned by J. A. Roper. In the year 1951, the charter of Roper Motor Company was amended to provide for the issuance of preferred stock of the par value of $124,000.00, represented by 1,240 shares with a par value of $100.00 each. The corporation issued this preferred stock to J. A. Roper as a stock dividend, and appropriate entries were made upon the books of the corporation, resulting in the surplus account of the corporation being decreased by $124,000.00 and the capital stock account increased by the same amount. J. A. Roper did not report this stock dividend as income in his income tax return for the year 1951, and upon an examination of the return by the Tax Commission, an additional assessment was made, resulting in the payment thereof under protest, and this suit was brought to recover the payment so made.

The respondent demurred to the complaint upon the ground that the complaint fails to state a cause of action for the reason that it appears that J. A. Roper received, in 1951, a stock dividend by way of preferred stock, which said dividend constituted income within the meaning of the "Income Tax Act of 1926"—Section 65-201 *et seq.,* 1952 Code of Laws of South Carolina. The lower Court sustained the demurrer interposed by the respondent, thereby holding that the preferred stock dividend declared by Roper Motor Company was income and subject to income tax. From the order sustaining the demurrer, the appellants prosecute this appeal. The case is before this Court upon a number of exceptions. These exceptions pose one question: "Is the dividend of preferred stock by a corporation, whose outstanding

stock was all common stock and owned by one individual, taxable as income to the owner of the common stock?"

It is elementary that in passing upon a demurrer, the Court is limited to a consideration of the pleadings under attack, all of the factual allegations whereof that are properly pleaded are for the purpose of such consideration deemed admitted. *Spell v. Traxler,* 229 S. C. 466, 93 S. E. (2d) 601. If a complaint states any cause of action, a demurrer should not be sustained. *Fleming v. Pioneer Life Ins. Co.,* 178 S. C. 226, 182 S. E. 154. It has also been held that when a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it, are to be regarded as embraced in such averment. *Bryant v. Smith,* 187 S. C. 453, 198 S. E. 20.

In sustaining the demurrer interposed by the respondent, the lower Court determined that a stock dividend declared out of the accumulated surplus of a corporation, and paid in preferred stock to the sole owner of the common stock, which was the only class of stock outstanding, was income to the recipient stockholder within the meaning of "The Income Tax Act of 1926".

The appellants assert that the issuance of the preferred stock here involved is not taxable under the Federal Income Tax Law, 26 U. S. C. A. § 1 *et seq.* They further assert that the State Income Tax Act was a model of the Federal Act, and the United States Supreme Court having construed the Federal Act to mean that a stock dividend is not "income", and inasmuch as these decisions had been made and were known prior to the adoption of our State Income Tax Act, that the General Assembly of this State intended to adopt the definition of "income" therein contained. For this reason the appellants assert that the respondent should likewise consider the stock dividend here involved to be nontaxable.

In 1918, in the case of *Towne v. Eisner,* 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, the United States Supreme

Court held that a stock dividend was not income within the meaning of the Revenue Act of 1913, 38 Stat. 114. It was not necessary in this case to pass upon the question of whether a stock dividend was income within the meaning of the Sixteenth Amendment to the Constitution of the United States. Congress had, in the meantime, provided that a stock dividend should be considered income to the amount of its cash value. When this provision of the Act was interpreted by the United States Supreme Court, it was held that a dividend in common stock, paid on common stock, was not income within the meaning of the Sixteenth Amendment, chiefly for the reason that income had not been severed from capital or realized by a distribution. Hence, the Federal Government was without authority to tax a stock dividend as income. *Eisner v. Macomber,* 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Although this decision dealt only with a dividend of common stock to common stockholders, it was accepted as a basis for a broader exemption. Congress provided in the Revenue Act of 1921 that "A stock dividend shall not be subject to tax. * * *" 42 Stat. 227, § 201 (d). This provision continued in all the subsequent Revenue Acts up to and including that of the year 1936.

We will not further discuss or trace the history of the provisions in the Revenue Acts in respect to Federal income taxation of stock dividends and the Treasury regulations thereunder. It is set forth fully in the case of *Helvering v. Griffiths,* 318 U. S. 371, 63 S. Ct. 636, 87 L. Ed. 843.

However, we do call attention to the case of *Helvering v. Sprouse,* 318 U. S. 604, 63 S. Ct. 791, 87 L. Ed. 1029, where it was held that a stock dividend of preferred stock by a corporation whose outstanding stock was common stock, all owned by one individual, is not taxable income to the owner of the common stock under the Revenue Act of 1936 [26 U. S. C. A. (I. R. C. 1954) § 305].

The appellants invoke the doctrine set forth in *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30, that where the

language incorporated into a statute is identical, or substantially identical, with that appearing in similar statutes of other states, which have received judicial construction and interpretation, prior to the adoption of the statute under consideration, in the absence of an expressed intention to the contrary, it will be presumed that the subsequently enacted statute was intended to be understood and applied in accordance with the construction given it by the courts of the states which had first adopted it. The foregoing rule of construction was fully set out in *Fuller v. South Carolina Tax Commission*, 128 S. C. 14, 121 S. E. 478. This brings us to a consideration of the question of whether "The Income Tax Act of 1926", now contained in Section 65-201 *et seq.*, 1952 Code of Laws of South Carolina, contains identical, or substantially identical, language as that appearing in the Federal Income Tax Law.

It is provided in art. 10—Section 1, of the 1895 Constitution of South Carolina: * * * "That the General Assembly may provide for a graduated tax on incomes, * * *."

We do not intend to discuss the history of the income tax law in this State. However, it appears that the first income tax law was enacted on March 5, 1897, and appears in 22 Stats. at 529. This income tax law was codified in Section 325 *et seq.*, of the 1902 Code of Laws of South Carolina. A subsequent codification appeared in Section 354 *et seq.*, of the 1912 Code of Laws of South Carolina.

By Act No. 502, approved March 13, 1922, 32 Stats. 896, the General Assembly of this State adopted "An Act to Raise Revenue for the Support of the State Government by the Levy and Collection of a Tax upon Income".

By the terms of Section 2 of said Act, it was provided:

"That for the purpose of determining the amount of net income, upon which income taxes are to be paid under the provisions of this Act, and for the purpose of fixing the amount of the said income tax, the payment and collection thereof, all of the provisions of an Act of Congress of the

United States of America, entitled 'An Act to reduce and equalize taxation, to provide revenue and for other purposes,' approved November 23, 1921, relating to levy, assessment and collection of income tax by the United States Government, and Acts amendatory thereto, relating to income tax and the collection thereof, which have been passed and approved prior to the time of the approval of this Act, the assessing and collecting of said tax and surtaxes, and all rules and regulations promulgated by the Department of Internal Revenue under and by virtue of said Acts be, and the same are hereby, adopted and enacted, together with all of the provisions thereof applicable to the enforcement of the same, which are not in conflict with any of the provisions of this Act, and declared to be the method, means and manner by and under which the amount of the net income of any taxpayer shall be ascertained and the amount of income tax due the State of South Carolina computed subject to the exemptions and limitations hereinafter set out in this Act, the same as if the said Act and all Acts amendatory thereto were set forth in full *in totidem verbis:"*

In the case of *Lancaster Cotton Mills v. South Carolina Tax Commission*, 132 S. C. 466, 129 S. E. 429, 431, this Court, in holding that the General Assembly of this State adopted the Federal Income Tax Law as the law of this State, said:

"The State of South Carolina has adopted the Federal Income Tax Law as will be seen by reference to the Act of the General Assembly approved March 13, 1922, particularly Section 2 of the Act, and as to which it is said in *Santee Mills v. Query*, 122 S. C. 158, 115 S. E. 202:

" 'The provisions of one statute may be made applicable to another by reference to the former in the latter, in the absence of constitutional restriction.' * * * The federal Income Tax Law, referred to in the State Act, is as fully effective in the State of South Carolina for the purposes of the national government as if it had been reenacted *totidem verbis* by the General Assembly of South Carolina.

\* \* \* The State Tax Commission has no power delegated to make any rules or regulations inconsistent with the law enacted or for any other purpose than to carry out the legislative will expressed in statutory form."

\* \* \*

"Since the Federal statute and the Federal rules and regulations govern, if the contention of the state tax commission should prevail, then this statute and these regulations would be set aside, and regulations made by the State tax commission would be substituted in their stead, and a tax would be collected by the state, when none is found to be due the Federal Government, and the state could only, in any event, collect a sum equal to 33 1/3% of the amount which was paid to the federal government, and, when no tax is exacted, or found to be due by the federal government, none can be collected by the State tax commission.

\* \* \*

"The state tax commission will therefore make its books and rules and regulations conform to the Federal Statute and the Federal rules and regulations promulgated in pursuance of the statute."

This Court likewise held in *Santee Mills v. Query,* 122 S. C. 158, 115 S. E. 202, 205, as follows:

"But we do not think the contention that the act adopts or attempts to adopt future laws, rules and regulations of the Federal government is warranted by the language of the statute. The reference (section 2 of the act) is to the United States Income Tax Act of November 23, 1921, and acts amendatory thereto 'which have been passed and approved prior to the time of the approval of this act.' The 'rules and regulations promulgated by the Department of Internal Revenue under and by virtue of said acts' are also adopted in the state act. While the language used with respect to said 'rules and regulations' is perhaps broad enough to cover future rules and regulations, in the absence of a clear indication of a different intention, it will be presumed that it was the intent of the lawmakers to restrict the appli-

cation of the statutory provision in question to the legitimate field of legislation (6 R. C. L., p. 80; *School Town of Andrews v. Heiney,* 178 Ind. 1, 98 N. E. 628, 43 L. R. A., N. S., 1023, Ann. Cas. 1915B, 1136; *Commonwealth v. People's Express Co.,* 201 Mass. 564, 88 N. E. 420, 131 Am. St. Rep. 416), and that the rules and regulations thus adopted by reference were those in force at the time of the approval of the act."

When the Income Tax Act of 1922 was adopted by the General Assembly of this State, the cases of *Towne v. Eisner* and *Eisner v. Macomber, supra,* had already been decided by the Supreme Court of the United States. The Federal Revenue Act of 1921 was also in effect at the time the General Assembly of South Carolina adopted the Federal Income Tax Act, and it provided "a stock dividend shall not be subject to tax". If this case had to be decided under the provisions of the Income Tax Act of 1922 and the two Supreme Court decisions above referred to, we would, under the rule set out in *Fuller v. South Carolina Tax Commission, supra,* be compelled to hold that the judicial construction and interprtation of the Federal Income Tax Act, as to dividends, would be binding upon this Court. This would be in line with the holding of this Court in the case of *Pacolet Mfg. Co. v. Query,* 174 S. C. 359, 177 S. E. 653, 655, 98 A. L. R. 1440, where this Court was called upon to determine whether it was proper to include in the capital stock for assessment of license tax the stock issued by way of stock dividend, it appearing that in 1923 the entire capital stock of Pacolet Mfg. Co. amounted to $4,000,000.00, one-half of which had been paid in cash, or its equivalent, by the stockholders, and the other one-half had been issued to the stockholders out of the surplus or earnings by way of a stock dividend. This Court said:

"The corporation and its duly constituted authorities, having elected to transfer the surplus fund to capital stock, which made said dividend stock not taxable as income under the federal or the state law, cannot now escape the state license tax by saying that this stock is still surplus."

By Act No. I, approved October 12, 1926, 35 Stats. 1, the General Assembly of this State adopted the "Income Tax Act of 1926". This Act, with amendments, is now incorporated in Title 65—Sections 201-367, inclusive, 1952 Code of Laws of South Carolina. It was provided in the basic Act "that on the passage of this Act, the Income Tax Act approved the 13th day of March, 1922, as amended, is repealed, to take effect January 1st, 1926". § 42.

Upon the enactment by the General Assembly of this State of the "Income Tax Act of 1926", the Income Tax Act of 1922 was fully and completely repealed. What was the effect of the repeal? In *South Carolina Mental Health Commission v. May,* 226 S. C. 108, 83 S. E. (2d) 713, 716, it is stated:

"The general rule, of course, is that the repeal of a statute has the effect of blotting it out as completely as if it had never existed and of putting an end to all proceedings under it. 59 C. J. 1189, 1190, and cases there cited."

It is apparent by the enactment of the "Income Tax Act of 1926" that the General Assembly decided to have a separate and distinct income tax law. The repeal of the Income Tax Act of 1922 completely removed from the Income Tax Laws of South Carolina any reference to the Federal Income Tax Act. The General Assembly refused to adopt in the State Income Tax Act the provisions in the then current Federal Act, which specifically exempted stock dividends from income tax. This action of the General Assembly shows a legislative intention that a preferred stock dividend should be taxed as income. If the General Assembly had intended to follow and to adopt the Federal Rule, it would have been quite easy and appropriate, if such was the intention of the Legislature, for it to say in the new enactment, when it used the word "dividends", but that such should not include a stock dividend.

In Title 65—Section 251 of the 1952 Code of Laws of South Carolina, gross income is defined as follows:

"The words 'gross income' mean the income of a tax-payer derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property, and also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit and income derived from any source whatsoever. The amount of all such items shall be included in the gross income of the income year in which received by the taxpayer unless, under the methods of accounting permitted under this chapter, any such amounts are to be properly accounted for as of a different period."

What is the definition of a "dividend"? In what sense did the General Assembly use this word in the Income Tax Act? This Court in *Gable v. South Carolina Tax Commission*, 189 S. C. 346, 1 S. E. (2d) 244, 246, gave a definition of dividends in the following language:

"Dividends have been defined as a 'fund set apart out of profits, to be apportioned among the shareholders.' 18 C. J., 1406. In *Lynch v. Hornby, supra,* the Court had this to say thereabout: 'Dividends are the approprate fruit of stock ownership, are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past, or are based upon the increased value of the property of the corporation.' "

This Court has announced the rule that the word "income" as used in a tax statute, is to be taken in its ordinary sense of gain or profit. *Southern Weaving Co. v. Query,* 206 S. C. 307, 34 S. E. (2d) 51; *Beard v. South Carolina Tax Commission,* 230 S. C. 357, 95 S. E. (2d) 628.

In *Etiwan Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682, 684, the following rule was announced:

"We have likewise held that in the construction of a statute, if its terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it fairly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense. *Weston v. Board of Com'rs of Police Insurance and Annuity Fund,* 196 S. C. 491, 13 S. E. (2d) 600; *Windham v. Pace,* 192 S. C. 271, 6 S. E. (2d) 270. The prime object, of course, in the construction of a statute is to ascertain and give effect to the legislative intent."

It is logical to conclude that the General Assembly of this State having repealed the Income Tax Act of 1922, in its entirety, thereby eliminating as a part of the Income Tax Law, the Federal Act, which had been incorporated therein by reference, was no longer to be bound by the Federal Act nor any decisions of any Court construing such Act. We so hold.

We must construe the word "dividend" in the plain, ordinary and popular sense of gain or profit. There is nothing in the Income Tax Act of 1926 which shows that the General Assembly used the word in a technical or peculiar sense. It did not see fit to place any limitation or condition in the Act in connection with the use of the word which requires any other construction.

The dividend received by J. A. Roper was of preferred stock and, while the record does not reflect the preferences, conditions, restrictions and liabilities, if any, fixed in such certificates of preferred stock, it is common knowledge that such has different characteristics from common stock. We can assume that in the issuance of the preferred stock, the provisions of Title 12—Section 211 *et seq.,* were used as the basis for the issuance thereof.

In the case of *Georgia Power Co. v. Watts,* 184 Ga. 135, 190 S. E. 654, 659, 110 A. L. R. 465, we find the following:

"The term 'preferred stock,' according to general legal interpretation, is stock which entitles the holder to receive

dividends from the earnings of a company before any dividends are paid on the common stock. By a 'dividend' is meant money paid out of its profits by a corporation to its stockholders, and a preferred dividend is a dividend paid to one class of stockholders in priority to that to be paid to another class."

In 13 Am. Jur., Corporations, para. 201, at page 319, it is said:

"The peculiar and distinguishing characteristic of preferred stock is that it is entitled to a priority over other stock in the distribution of profits, being ordinarily entitled to dividends of a definite percentage or amount. Preferred stockholders may, however, by agreement be given a preference over common stockholders in the capital of a corporation, and such perference will be given effect upon a dissolution of the corporation."

In the Order of the lower Court there is cited the case of *Wilson v. South Carolina Tax Commission*, 220 S. C. 171, 66 S. E. (2d) 698, and it is asserted that the case held "although the facts are not identical, that case squarely decides that a stock dividend is income within the meaning of our Income Tax Act." We should point out that the *Wilson case* did not go to the extent of holding that a stock dividend is income within the meaning of the Income Tax Act, because there a new corporation was formed to which a portion of the surplus of an existing corporation was transferred in order to insulate its real estate from liability. As a part of the plan the shares of the new corporation were distributed to the shareholders of the old corporation. It was held that the shareholders received a distribution of the profits of the old corporation and were liable for income taxes thereon.

It should be stated that the holding we have here made as to the taxability of a preferred stock dividend is in accord with that adopted by the Tax Commission. This construction as given by the Tax Commission is entitled to most respectful consideration, and ought

not to be overruled without cogent reasons. *Asmer v. Livingston*, 225 S. C. 341, 82 S. E. (2d) 465.

We conclude that the lower Court was correct in sustaining the demurrer interposed by the respondent to the complaint filed by appellants.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.